IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 3, 2024

**STATE OF TENNESSEE v. JONATHAN ROGERS ROBERTSON**

**Appeal from the Circuit Court for Madison County**
**No. 21-285    Kyle C. Atkins, Judge**

_____

**No. W2023-00819-CCA-R3-CD**

_____

Defendant, Jonathan Rogers Robertson, was convicted by jury of unlawful possession of a firearm after having been convicted of a felony crime of violence, unlawful possession of a firearm after having been convicted of a felony drug offense, and possession of drug paraphernalia. The trial court imposed an effective sentence of forty-five years. Defendant appeals, arguing that the evidence was insufficient to support his convictions because the State failed to establish that he possessed the firearm and drug paraphernalia. Upon review of the entire record, the briefs of the parties and the applicable law, we affirm the judgments of the trial court, but remand for merger of counts one and two and entry of corrected judgment forms. We affirm the trial court's judgments in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part; Reversed and Remanded in Part**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

William J. Milam, Jackson, Tennessee, for the appellant, Jonathan Rogers Robertson.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Benjamin Mayo, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

At approximately 4:30 p.m. on September 16, 2020, Madison County Sheriff's Office ("MCSO") Narcotics Deputy Adam Brown[1] conducted a traffic stop of a gray Buick LeSabre near "the area of 45 Bypass and Frontage Road" because the driver was not wearing a seat belt. There were three occupants of the vehicle: a female driver, a male in the front passenger seat, and a female in the backseat on the passenger side. Deputy Brown identified Defendant in court as the male passenger of the vehicle. Deputy Brown asked the driver for consent to search the vehicle, which was granted. He removed the vehicle's occupants and waited for additional officers to arrive on scene before beginning the search of the vehicle.

A search of the vehicle revealed a bag on the front passenger seat floorboard and a scale in the backseat on the passenger side of the vehicle. Inside the bag, Deputy Brown located a Glock Model 23 .40 caliber firearm, a digital scale with "white residue" on it, a roach clip, a burnt spoon, and mail addressed to Defendant. He explained that a roach clip is "like a pair of tweezers" used to hold a marijuana cigarette to avoid burning the user's fingers. Deputy Brown stated that the burnt spoon is "commonly associated with heroin use" and that drug users "would put the narcotic on top of the spoon and add water to it, and then light the spoon on fire . . . underneath the narcotics . . . so that they can ingest it either by injection or by inhaling it." He did not locate any drugs in the vehicle. Deputy Brown collected the firearm, roach clip, scales, and burnt spoon but returned the mail to the bag after photographing it. Photographs of the mail and each of the items collected were admitted into evidence at trial.

Deputy Brown determined that Defendant possessed the bag because the bag contained mail addressed to Defendant and the bag was found "between [Defendant's] legs in the front passenger seat." There was not "anything else in the bag that identified anybody else by name other than" the mail. Defendant was prohibited from possessing a firearm because he was a convicted felon; certified copies of Defendant's prior convictions for aggravated burglary in April 2013 and sale of cocaine in April 2010 were admitted into evidence. Deputy Brown arrested Defendant, and another officer transported Defendant to jail. Deputy Brown was later called to the jail because "paraphernalia" was found on Defendant, including a syringe, "unknown white pills," and some baggies. A photograph of the contraband was admitted into evidence.

---

[1] At the time of trial, Adam Brown was employed with the Jackson Police Department. We will use his title at the time of the offense.

Deputy Brown cited the driver for the seatbelt violation and released both female occupants. Deputy Brown agreed that he had "a lot" of experience with traffic stops and subsequent searches, and that sometimes he would arrest all occupants for possession of contraband found during a search. He explained, however, that in this case he arrested only Defendant because "[e]very item except one digital scale was found in a bag with the firearm with mail that had his name on it . . . in front of the seat that he was sitting in in between his legs." He did not believe he had evidence that the two female occupants had possessed the contraband.

On cross-examination, Deputy Brown explained that he searched the vehicle himself and found one of the scales "on the passenger side on the back. It may have been [on] the floorboard[.]" He agreed that it was "possible" for both female occupants to have access to the bag in the front passenger seat. He did not conduct any further investigation into the firearm. He agreed that the white pills were tested and contained "nothing illegal[.]"

On redirect examination, Deputy Brown explained that the driver could have "reached over" and the backseat passenger "could have climbed over" to access the bag but asserted that Defendant had access to the bag because "[i]t was between his legs." Deputy Brown explained that he considered statements from the female occupants obtained at the scene, in addition to the location of the bag and Defendant's mail, when determining whether the totality of the circumstances indicated that Defendant possessed the bag.

Jackson Police Department ("JPD") Officer Christopher Ingram assisted Deputy Brown with the traffic stop. Officer Ingram identified Defendant in court as one of three occupants of the vehicle. Officer Ingram stood with Defendant while Deputy Brown searched the vehicle. After Deputy Brown arrested Defendant, Officer Ingram transported Defendant to the Criminal Justice Center. Officer Ingram was "filling out the paperwork," when another officer told him they had found a syringe during a search of Defendant. He called Deputy Brown to the jail because it "was his case."

MCSO Correctional Officer Dylan Fowler identified Defendant's "booking face sheet," which was entered into evidence. It identified Defendant by name, date of birth, race, gender, and social security number, and showed that Defendant was booked into the jail at 5:55 p.m. on September 16, 2020. The address on the booking face sheet matched the address on the piece of mail found in the bag. Officer Fowler was involved in searching Defendant at the jail; during the search, a "capped syringe fell from [Defendant's] buttocks." Officer Fowler collected the syringe and turned it over to Deputy Brown.

Defendant elected not to testify and did not present proof. Based on the foregoing evidence, the jury convicted Defendant as charged of unlawful possession of a firearm after

having been convicted of a felony crime of violence (count one), unlawful possession of a firearm after having been convicted of a felony drug offense (count two), and possession of drug paraphernalia (count four).[2]

After a sentencing hearing, the trial court found that Defendant was a career offender based on Defendant's "at least six prior C felonies." *See* T.C.A. § 40-35-108(a)(1) (defining a career offender). The trial court sentenced Defendant as a career offender to the maximum Range III sentences for counts one and two – thirty years and fifteen years, respectively. *Id.* §§ -108(c) ("A defendant who is found by the court beyond a reasonable doubt to be a career offender shall receive the maximum sentence within the applicable Range III."); -112(c)(2), (3) (providing the sentencing ranges for Class B and C felonies). The trial court sentenced Defendant to eleven months and twenty-nine days for count four and ordered counts one and two to be served consecutively with count four to be served concurrently with count one.

Defendant filed a timely motion for new trial, which was subsequently denied on January 11, 2023. Defendant's timely appeal is now properly before this court.

**Analysis**

I. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support each of his convictions. His sole challenge to each conviction is that the State failed to prove that he possessed the firearm and drug paraphernalia "because it is possible that the items in the car belonged to the other occupants of the car." He does not challenge the search of the vehicle or of the bag, that his prior convictions satisfy Tennessee Code Annotated section 39-17-1307, or that the spoon, roach clip, scale, and syringe qualify as drug paraphernalia. The State asserts that the evidence was sufficient to prove that Defendant either actually or constructively possessed the items within the bag. We agree with the State.

When evaluating the sufficiency of the evidence on appeal, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see* Tenn. R. App. P. 13(e). The standard of review is the same whether a conviction is based on direct or circumstantial evidence. *State v.*

---

[2] Defendant was also indicted for criminal simulation. While it is unclear from the record when this charge was dismissed, the jury was not charged with this offense and the judgment reflects that it was nolle prosequied without costs.

*Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). Further, circumstantial evidence need not remove every reasonable hypothesis except that of guilt. *Id.* at 381 (quoting *United State v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (quoting *Hanson*, 279 S.W.3d at 275). Further, the State is afforded "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)).

The jury evaluates the credibility of the witnesses, determines the weight to be given to witnesses' testimony, and reconciles all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence. *Dorantes*, 331 S.W.3d at 379. A guilty verdict "accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997) (citing *State v. Grace*, 493 S.W.3d 474, 476 (Tenn. 1973)). This court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." *Wagner*, 382 S.W.3d at 297 (citing *Bland*, 958 S.W.2d at 659).

As relevant to counts one and two:

> (b)(1) A person commits an offense who unlawfully possesses a firearm, as defined in § 39-11-106, and:
>
> > (A) Has been convicted of a felony crime of violence, an attempt to commit a felony crime of violence, or a felony involving use of a deadly weapon; or
> >
> > (B) Has been convicted of a felony drug offense.

T.C.A. § 39-17-1307(b)(1)(A), (B). Aggravated burglary is a felony crime of violence. *Id.* at § 39-17-1301(3). Regarding count four, it is unlawful for a person "to use, or to possess with intent to use, drug paraphernalia[.]" *Id.* § 39-17-425(a)(1). Drug paraphernalia is defined as "all equipment, products and materials of any kind which are used, intended for use, or designed for use in . . . injecting, ingesting, inhaling or otherwise introducing into the human body, a controlled substance[.]" *Id.* § -402(12).

"[T]he element of 'possession' is really a question about one's *control* over an item[.]" *State v. Chism*, No. E2023-00620-CCA-R3-CD, 2024 WL 482881, at *4 (Tenn. Crim. App. Nov. 19, 2024) (citing *Peters v. State*, 521 S.W.2d 233, 235 (Tenn. Crim. App. 1974)), *no perm. app. yet filed*. Possession may be either actual or constructive. *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987); *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). Actual possession concerns a person's physical control over an item, but "constructive possession requires only that a defendant have 'the power and intention . . . to exercise dominion and control over' the item allegedly possessed." *State v. Fayne*, 451 S.W.3d 362, 370 (Tenn. 2014) (quoting *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013)). More simply, "constructive possession is the ability to reduce an object to actual possession." *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995); *State v. Ross*, 49 S.W.3d 833, 845-46 (Tenn. 2001); *State v. Transou*, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996). Constructive possession is evaluated based on the totality of the circumstances. *State v. Siner*, No. W2020-01719-CCA-R3-CD, 2022 WL 252354, at *5 (Tenn. Crim. App. Jan. 27, 2022) (first citing *State v. Richards*, 286 S.W.3d 873, 881 (Tenn. 2009); and then citing *Robinson*, 400 S.W.3d at 534), *no perm. app. filed*. A person who possesses a bag also possesses all items within that bag. *State v. Hart*, 676 S.W.3d 101, 108 (Tenn. Crim. App. 2023). Thus, testimony establishing possession of the bag is sufficient to support a conviction for possession of items within the bag. *Id.*

When viewed in the light most favorable to the State, the evidence showed that Deputy Brown initiated a traffic stop based on the driver's failure to wear a seatbelt. Defendant sat in the front passenger seat. A consensual search of the vehicle revealed a scale in the backseat of the vehicle and a bag in the front passenger seat which contained a firearm, burnt spoon, roach clip, and mail addressed to Defendant. Based on the totality of the circumstances, the location of the bag between Defendant's feet, mail addressed to Defendant in the bag, and statements from the vehicle's other occupants, Deputy Brown determined based on his training and experience as a narcotics deputy that Defendant was in possession of the bag. It is undisputed that Defendant is a convicted felon prohibited from possessing a firearm. And Deputy Brown testified that the spoon, roach clip, and scales were common drug paraphernalia and explained their common usage. During Defendant's search at the jail, he was found in possession of a syringe, additional drug paraphernalia.

Regarding the possession of drug paraphernalia conviction, Defendant does not contest that he possessed the syringe found in his possession during the jail search. The jury could have reasonably concluded that Defendant possessed drug paraphernalia based solely on the syringe. Thus, the evidence was sufficient to support Defendant's conviction in count four regardless of Defendant's possession of the bag.

However, the jury could have also reasonably concluded that Defendant was in actual possession of the bag, and therefore the firearm and drug paraphernalia, based on the location of the bag in the vehicle. Additionally, the evidence supports Defendant's constructive possession of the bag based on the location of the bag, Defendant's mail in the bag, and the statements of the vehicle's other occupants.

As Defendant correctly notes, Deputy Brown stated that the other occupants of the vehicle "could have" constructively possessed the bag. However, possession "may be exclusive or joint." *State v. Hart*, No. W2023-00122-CCA-R3-CD, 2024 WL 17255, at *4 (quoting *Key v. State*, 563 S.W.3d 184, 189 (Tenn. 1978)); *State v. McCathern*, No. M2011-01612-CCA-R3-CD, 2012 WL 5949096, at *4 (Tenn. Crim. App. Nov. 16, 2012) (stating that criminal liability for drug possession may result from either sole or joint possession). Thus, whether the vehicle's other occupants could have been found to be in possession of the bag is irrelevant to determine whether Defendant possessed the bag, so long as there are additional facts that "affirmatively link" Defendant to the bag. *Siner*, 2022 WL 252354, at *5. Here, in addition to his proximity to the bag, mail addressed to Defendant was also found in the bag. Further, Defendant extensively cross-examined Deputy Brown regarding his decision not to charge the other passengers of the vehicle with possession of the items in the bag. The jury considered, and ultimately rejected this argument, and this court will not second guess their judgment. *See Bland*, 958 S.W.2d at 659.

Regarding counts one and two, Defendant notes that Deputy Brown did not obtain fingerprints from the firearm or establish ownership of the firearm. However, neither is required to support a conviction for possession of a firearm. *See State v. Peters*, No. W2018-01328-CCA-R3-CD, 2019 WL 3775872, at *4 ("Although ownership may indicate possession, one may also be in possession of a weapon without holding actual title to it."); *Hart*, 767 S.W.3d at 108 (citing *State v. Sawyer*, No. W2018-01267-CCA-R3-CD, 2019 WL 1560864, at *3 (Tenn. Crim. App. Apr. 10, 2019)) (noting that "[a] conviction is not undermined by a lack of DNA or fingerprint evidence if there is legally sufficient evidence of guilt otherwise").

For the foregoing reasons, the evidence was sufficient to establish that Defendant possessed the bag, and thus, possessed the firearm and drug paraphernalia inside of the bag. Defendant is not entitled to relief.

## II. Merger of Counts One and Two

While not raised by the parties, we conclude that this case must be remanded to the trial court for merger of counts one and two into a single conviction for unlawful possession of a firearm by a convicted felon.

While generally this court shall review only those issues presented for review, we may exercise "discretion to consider issues that have not been properly presented in order to achieve fairness and justice." *State v. Bristol*, 654 S.W.3d 917, 926-27 (Tenn. 2022) (first citing Tenn. R. App. P. 13(b), 36(a); and then citing *In re Kaliyah S.*, 455 S.W.3d 533, 540 (Tenn. 2015)). Further, an appellate court may "consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." *Id.* at 927 (citing Tenn. R. App. P. 36(b)). However, "this discretion should be 'sparingly exercised.'" *Id.*; *see State v. Locust*, No. W2022-01026-CCA-R3-CD, 2023 WL 8940830, at *24 (Tenn. Crim. App. Dec. 28, 2023) (concluding that "[e]rroneous merger of convictions clearly results in prejudice to the judicial process and the interests of the public, and as such, we choose to address it pursuant to Rule 13(b)"), *perm. app. denied* (Tenn. Sept. 12, 2024); *Hart*, 2024 WL 17255, at *5 (concluding after sua sponte review that the case must be remanded to the trial court for merger of three counts of unlawful possession of a firearm by a convicted felon into one conviction).

Both the United States and Tennessee constitutions provide protections against being prosecuted or punished twice for the same conduct. In certain circumstances, these protections require that "two convictions or dual guilty verdicts must merge into a single conviction to avoid double jeopardy implications." *State v. Berry*, 503 S.W.3d 360, 362 (Tenn. 2015). When double jeopardy concerns are implicated in a single prosecution:

> . . . . "[M]ultiple punishment" challenges ordinarily fall into one of two categories: unit-of-prosecution claims and multiple description claims. Unit-of-prosecution claims arise when a defendant has been convicted of multiple violations of the same statute. Multiple description claims arise when a defendant has been convicted of multiple criminal offenses under different statutes.

*State v. Allison*, 618 S.W.3d 24, 43 (Tenn. 2021) (citing *State v. Watkins*, 362 S.W.3d 530, 543-44 (Tenn. 2012)).

Here, Defendant was charged and convicted of two counts of unlawful possession of a firearm by a convicted felon. The distinction between counts one and two were the underlying felony convictions; count one relied upon Defendant's conviction for aggravated burglary while count two relied upon Defendant's conviction for selling cocaine. While it was proper for the State to charge Defendant with these separate counts, "double jeopardy concerns make clear that Defendant can only be punished for a single instance of firearm possession, as proof of only one episode of possession was presented to the jury." *Hart*, 2024 WL 17255, at *5 (citing *State v. Reynolds*, No. E2021-00066-CCA-R3-CD, 2022 WL 1741266, at *11 (Tenn. Crim. App. May 31, 2022), *no perm. app*

*filed*).  Thus, we conclude that this case must be remanded to the trial court for merger of counts one and two and for entry of corrected judgments reflecting the merger.  *See Allison*, 618 S.W.3d at 43; *Reynolds*, 2022 WL 1741266, at *11; *Hart*, 2024 WL 17255, at *5.

## CONCLUSION

We conclude that the evidence was sufficient to support Defendant's convictions, but the trial court erred by failing to merge counts one and two into a single conviction. Accordingly, we remand the case to the trial court for merger of those counts and for entry of corrected judgments.  After merger, the record shall reflect a single conviction for possession of a firearm by a convicted felon and a thirty-year sentence.  We affirm the judgments of the trial court in all other respects.


s/ **Jill Bartee Ayers**
JILL BARTEE AYERS, JUDGE